**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV 08-1778-PHX-DGC (ECV) |
| Plaintiff/Respondent, | No. CR 02-1170-PHX-DGC |
| v. | **ORDER** |
| Moustapha Lotfi Eljammal, | |
| Defendant/Movant. | |

In 2005, a jury convicted Moustapha Lotfi Eljammal of altering or removing motor vehicle identification numbers, transportation of stolen vehicles, sale or receipt of stolen vehicles, conspiracy, and aiding and abetting. Eljammal was sentenced to 210 months in prison followed by three years of supervised release. Eljammal appealed. The Ninth Circuit reversed the conviction on one count, but affirmed the overall sentence.

On September 29, 2008, Eljammal filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. Doc. 1. He asserted three grounds for relief: (1) that his trial attorney, William Foreman, provided ineffective assistance of counsel when he failed to advise Eljammal of a pre-trial plea offer before it expired and of a post-conviction offer of reduced sentence; (2) that his trial attorney provided ineffective assistance of counsel when he failed to rebut the government's inaccurate testimony concerning the number of victims and the amount of loss; and (3) that his retained appellate counsel provided ineffective assistance when he failed to file a reply brief on appeal. Doc. 1. In his memorandum in support of his motion to vacate, Eljammal withdrew his second ground for relief. *See* Doc. 10 at 4.

On November 24, 2009, United States Magistrate Judge Edward C. Voss issued a report and a recommendation that the motion to vacate sentence be denied ("R&R"). Doc. 21. The Court accepted the R&R as to ground three, but rejected it as to ground one. Doc. 24 at 1. The Court determined that Eljammal was entitled to an evidentiary hearing on the question of "whether trial counsel rendered ineffective assistance by failing to communicate the pre-conviction plea agreement offer to Eljammal."[1] Doc. 24 at 5. The Court set a date for an evidentiary hearing on the issue.

On July 30, 2010, the government and Eljammal filed a joint motion to vacate the evidentiary hearing. Doc. 44. The parties asked the Court to determine whether Eljammal received ineffective assistance of counsel solely on the basis of the pleadings and additional documents attached to the motion to vacate. For reasons that follow, the Court finds that Eljammal did not receive ineffective assistance of counsel and therefore will deny his motion to vacate. Doc. 1.

## I. Legal Standard.

Defense counsel has a duty under the Sixth Amendment to provide adequate representation. *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that (1) "his attorney's performance was unreasonable under prevailing professional standards" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *U.S. v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994). "An attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under the prevailing professional standards[.]" *Id.* at 1466.

## II. Analysis.

The question before the Court is whether the facts show that Eljammal received ineffective assistance of counsel because his attorney failed to provide him with a written

---

[1] The Court determined that Eljammal was not entitled to an evidentiary hearing on the question of whether he received ineffective assistance of counsel because of his attorney's failure to relay a post-conviction offer of reduced sentence to him. Doc. 24 at 5.

copy of a plea agreement which Eljammal contends he would have accepted. It is undisputed that, on January 24, 2005, the government sent Foreman by fax a copy of the proposed plea agreement. Doc. 10-7 at 2-5. The government made clear that it needed "an answer by the close of business on Wednesday," January 26, 2005. *Id.*

**A. Evidence.**

  **1. Eljammal's Evidence.**

Eljammal swears in an affidavit that Foreman visited him in prison in January of 2005 and told him that there was a plea offer for "less than 5 years." Doc. 10-9 at 2-3. Eljammal contends that he requested counsel to provide him with a written copy of the plea agreement, which counsel promised to bring the next day. *Id.* at 3. He swears that when Foreman came the next day, he told Eljammal that the offer had changed to 77 months, and that he still did not have a written copy of the plea agreement. *Id.* Foreman allegedly promised to bring a copy of the agreement the next day. *Id.* Counsel did not bring an agreement the next day, but instead told Eljammal that the offer changed to 12 to 15 years. *Id.* After that, Eljammal was told that the offer had expired. *Id.* Eljammal avows that he never saw a written plea agreement and never was told there was an acceptance deadline. *Id.* He contends that if he had "seen a written plea agreement offering the low end of 70-87 months, [he] would have signed it." *Id.*

  **2. The Government's Evidence.**

Foreman, in an affidavit submitted by the government in response to the motion to vacate, tells the facts quite differently. Doc. 17-1 at 2-5. Foreman swears that at their first meeting Eljammal clearly said "he had no interest in any plea offer and was determined to take his case to trial." *Id.* at 2. Foreman contends that Eljammal "exhibited a high degree of resistance to negotiated resolution, and made it plain that he wanted a trial." *Id.* at 3. Counsel met with several friends of Eljammal to discuss ways of persuading Eljammal to consider plea options, but those efforts failed. *Id.* When Foreman attempted to discuss the government's plea offer with Eljammal, he was told to stop wasting time and do his job, which he "understood to mean that [he] should continue to prepare the case for trial and that

- 3 -

1  [Eljammal] wanted no further discussion about a negotiated resolution by plea agreement."
*Id.*

### 3. The Supplemental Evidence.

On July 30, 2010, the parties submitted supplemental evidence pertinent to the question of whether Foreman adequately communicated the January 24, 2005 plea agreement to Eljammal. Included in this supplemental evidence is a memorandum-to-file drafted by Foreman in which he noted that he met with Eljammal for several hours on Tuesday, January 25, 2005 "for the specific purpose of discussing the plea offer" and that "Defendant indicated on more than one occasion that the only plea offer he would accept was an immediate release from custody and immediate return of seized property." Doc. 44-2 at 8. Also included in this evidence is an hourly worksheet completed by Foreman, which includes the following pertinent entries: 1.5 hours of travel to Eljammal's prison on January 25, 2005; 2.0 hours to "[c]onference with defendant re plea issues, draft witness list, result of motion hearing, trial strategy"; and 0.3 hours to draft a letter to Eljammal regarding his rejection of the plea offer. *Id.* at 13-14. There is also a letter to Eljammal from Foreman, dated January 31, 2005, in which Foreman confirmed the conversation that he and Eljammal had at their meeting – a meeting in which Eljammal "indicated to [Foreman] that [he] [had] no interest in accepting any plea offer whatsoever short of an immediate release from custody and return of [his] property."[2] *Id.* at 5. Eljammal also submitted an affidavit in which he stated that he had no recollection of receiving the January 31, 2005 letter from Foreman. *Id.* at 2-3.

### B. Findings of Fact.

The Court finds Foreman's affidavit to be more credible than Eljammal's affidavits, particularly in light of the additional documentation submitted by the parties. The hourly

---

[2] It is unclear to the Court why the letter of January 31, 2005 stated that Eljammal and Foreman met on January 27, 2005, given that Foreman's memorandum-to-file and his hourly worksheet clearly state that they met on January 25, 2005. The Court finds this discrepancy to be unimportant. As discussed below, even if Foreman did not adequately convey the agreement to Eljammal, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Blaylock*, 20 F.3d at 1465.

worksheet, memorandum-to-file, and letter from Foreman to Eljammal support assertions in the Foreman affidavit. On the basis of all the evidence, the Court finds the following facts:

1. On January 24, 2005, the government sent Foreman by fax a copy of the proposed plea agreement that was set to expire on January 26, 2005.

2. On January 25, 2005, Foreman met with Eljammal for two hours to discuss the plea agreement.

3. Eljammal made clear at the January 25, 2005 meeting that he did not want to see a copy of the plea agreement and that he would not accept any plea agreement that did not allow for his immediate release.

4. If Eljammal had received a copy of the plea agreement and been fully informed of its contents, he would have rejected it because it did not allow for his immediate release.

**C.     Conclusions of Law.**

Eljammal's first argument is that Foreman failed effectively to communicate the plea agreement to him by providing him with a copy before the deadline expired. It is not clear from the evidence whether Foreman actually provided Eljammal with a copy of the plea agreement, or whether he simply told Eljammal the details. Regardless, it is clear that Foreman discussed the plea agreement with Eljammal and that Eljammal made clear he did not want to see a copy of the agreement. Eljammal stated he would only sign a plea agreement that provided for his immediate release – a provision that was not contained in any of the government's offers. The Court cannot conclude that counsel provides ineffective assistance when he fails to show his client a copy of a plea agreement the client has said he will not accept. Moreover, even if it was error for Foreman to fail to provide Eljammal with a copy, the Court cannot find ineffective assistance because there is no "reasonable probability that, but for [the error], the result would have been different." *Blaylock*, 20 F.3d at 1465. Eljammal made clear he would not accept the agreement.

Eljammal argues that he has shown a "reasonable probability" of prejudice because (1) he stated in an affidavit that he would have accepted the plea agreement if Foreman had adequately explained it to him, (2) there was a significant discrepancy between his imposed

sentence and the sentence offered in the plea agreement, and (3) the government had a very strong case against him. *See Riggs v. Fairman*, 399 F.3d 1179, 1183-84 (9th Cir. 2005) (Ninth Circuit noting that a substantial discrepancy between an imposed sentence and an offered sentence is evidence of prejudice); *Blaylock*, 20 F.3d at 1466 (same); *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (Ninth Circuit noting that a weak case against a petitioner weighs against a finding of prejudice). Despite the sentencing disparity and the fact that the government had a very strong case, however, the evidence shows that Eljammal would have rejected the plea agreement had it been adequately conveyed to him. Foreman's credible affidavit, along with his supporting documentation, make clear that Eljammal told his counsel on several occasions that he would not consider a plea agreement that did not provide for his immediate release. *See* Doc. 17-1 at 2-5; Doc. 44-2 at 8. This credible evidence outweighs Eljammal's claim that he would have accepted the agreement.

This case is markedly different from the three cases cited by Eljammal, in which there was no evidence that the petitioner would have rejected the plea agreements had they been adequately conveyed to them. *See Riggs*, 399 F.3d at 1183-84 (Ninth Circuit finding that petitioner "credibly testified" that he would have accepted the plea agreement, and not citing any evidence showing that petitioner would have refused the plea bargain); *Blaylock*, 20 F.3d at 1466 (Ninth Circuit noting that the district court did not conduct a credibility finding and that the fact that the sentence imposed was more severe than the sentence offered in the plea bargain meant that petitioner might have been prejudiced); *Jones*, 114 F.3d at 1012 (Ninth Circuit finding no prejudice).

Eljammal's second argument is that Foreman miscommunicated the plea offer by stating it had increased to 12-15 years. Even if it is assumed that Foreman made this statement, the Court cannot find that there "is a reasonable probability that, but for [the statement], the result would have been different." *Blaylock*, 20 F.3d at 1465. Eljammal made clear that he would accept a plea agreement only if it allowed for his immediate release. The offered plea agreement did not allow for his immediate release, and Eljammal therefore would have rejected it even if it had been accurately described.

Eljammal's third argument is that Foreman did not inform him of the offer's deadline. Again, even if it is assumed that Foreman made such a mistake, the Court cannot find that it resulted in prejudice. Because Eljammal made clear that he could not accept a plea agreement that called for additional prison time, he would have rejected the offered plea even if he knew a deadline had been imposed.

Finally, Eljammal argues that Foreman was ineffective because he failed to show Eljammal a copy of the proposed agreement before it expired. Even if Foreman did fail to provide Eljammal with a copy, the Court cannot find that such a failure was prejudicial. Eljammal made clear that he would not accept the plea and told Foreman to stop wasting time on plea discussions. There is no reason to conclude that he would have accepted the plea had he been provided with a copy of it.

**IT IS ORDERED:**

1. Petitioner's motion to vacate (Doc. 1) is **denied**.
2. The Clerk of Court shall terminate this action.

DATED this 27th day of August, 2010.

_____
David G. Campbell
United States District Judge